FUQUAY *v.* DESHA BANK & TRUST COMPANY.

Opinion delivered June 26, 1922.

1. ESTOPPEL—INCONSISTENT CLAIMS.—Where the owner of property mortgaged it to a bank to secure funds to pay debts of his business, and had the proceeds placed to his wife's credit in the bank, after becoming bankrupt, on his claim of exemption out of the funds in the bank, he was estopped to assert a claim to have the funds applied in satisfaction of the mortgage debt.

2. BANKRUPTCY—RIGHTS OF THIRD PARTIES.—Where a husband and wife mortgaged their homestead to secure credit at a bank, and the money was placed to the wife's credit, to be used in paying certain debts of the husband, an order in a voluntary proceeding by the husband in bankruptcy did not bind the interest of the wife in the bank account or affect her right to have it apply on the mortgage debt.

3. HOMESTEAD—CONSIDERATION FOR CONVEYANCE.—Where a husband and wife mortgaged their homestead to secure credit at a bank to use in paying certain debts of the husband's firm, the wife's signature to the mortgage was sufficient consideration for an agreement that the proceeds should be deposited to her account, constituting a valid contract, as against the claims of the creditors of her husband after he became bankrupt.

4. MORTGAGES—PRIORITY.—Where a husband and wife mortgaged their homestead to secure credit at a bank which lent the money on condition that it should be used in the payment of the debts of the husband's firm, and which money was deposited to the wife's account, on the husband's becoming bankrupt, the bank had a right to the payment of the debt due by the copartnership out of the fund before same should be applied to the mortgage debt.

Appeal from Desha Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*Taylor & Jones,* for appellants.

The record is clear that the money was borrowed for the express purpose of paying the creditors and for no other purpose; that Mrs. Fuquay executed the mortgage on the homestead only on condition that the money so borrowed should be so applied and that it be deposited in her name, subject to her check, for that purpose. This having been done, and the purpose for which the loan was obtained having failed, she had the right to have the money used for the purpose of canceling the mort-

gage. 181 N. W. 628; 31 Ill. App. 353, 358; 87 S. W. 178; 99 Tex. 546, 91 S. W. 106. She was not a party to any of the attachment and garnishment proceedings nor to the proceeding in bankruptcy, and her rights are not affected thereby.

*E. E. Hopson* and *De Witt Poe,* for appellee.

The facts in this case do not bring it within the rule laid down in *Kittle* v. *Straus,* 181 N. W. 628, relied on by appellant. The evidence clearly shows that Mrs. Fuquay had no agreement with the bank or any of its agents, but only with her husband.

The lower court was justified in finding the agreement between Mr. Fuquay and the bank to be as stated by Mr. Thane, and the former and his wife never attempted to enforce the agreement. After the garnishment had been served, innocent parties' rights attached. Moreover there was an adjudication of the Federal court that this money belonged to the creditors, and the bank had no alternative but to obey the mandates of that court. If Mrs. Fuquay can be classed as an innocent party, the rule laid down in *Desha Bank & Trust Co.* v. *Doran,* 147 Ark. 177, should apply. See also 62 Ark. 325; 107 *Id.* 16.

McCULLOCH, C. J. J. W. Fuquay is the owner of certain real estate, which constitutes his homestead, in the town of Arkansas City, and on May 22, 1917, he executed a mortgage thereon to appellee to secure a loan of money in the sum of two thousand dollars, evidenced by a promissory note of that date, bearing interest at ten per cent. per annum from date until paid. His wife, Lizzie Fuquay, joined in the execution of said mortgage and note, and she is also one of the appellants. This is an action instituted by appellee against appellants in the chancery court of Arkansas County to foreclose said mortgage.

Appellee is a banking corporation doing business in Arkansas City, and the sum loaned to appellants was

deposited in appellee bank to the credit of Mrs. Fuquay, where its still remains thus deposited.

Appellants answered the complaint, setting up the defense that the loan had been repaid by a check drawn by Mrs. Fuquay on said fund and delivered to appellee.

On the hearing of the cause the court rendered a decree foreclosing the mortgage for the full amount of the original debt and accrued interest.

J. W. Fuquay and T. L. Pertius were in copartnership, engaged in the mercantile business in Arkansas City under the firm name of Model Grocery & Meat Market, and became considerably involved in debt. Fuquay applied to Mr. Thane, the president of appellee bank, for a loan of three thousand dollars to use in paying the copartnership debts. The firm owed the bank a debt of two hundred dollars, and Thane agreed to make a loan of two thousand dollars to be used for the purposes mentioned. He testified that Fuquay represented to him that the stock of merchandise and fixtures were of the market value of about $3,800, that the debts of the firm amounted only to about eighteen hundred dollars, and that he made the loan for the bank on the faith of those representations.

When the note and mortgage were executed, J. W. Fuquay delivered the same to Mr. Thompson, the cashier of the bank, and the amount of the loan was, at the request of Fuquay, placed to the credit of Mrs. Fuquay, and she was given a depositer's book showing the deposit in her name. Thane testified that he did not know that the money was thus deposited until after it was done. A short time afterwards Mrs. Fuquay gave a check on the fund for seventy dollars to pay a personal debt, and the bank refused to honor the check. This check was presented for payment on June 11, 1917, and two days earlier the Dermott Grocery Company sued the members of the copartnership for debt and caused a garnishment to be served on the bank. On June 19, 1917, Mrs. Fuquay drew a check on the bank, payable to its own order, for the full amount of the deposit, and J. W. Fuquay de-

livered the check to Thane with instructions to credit the amount on the mortgage debt to the bank. Thane refused to do that on the ground stated that "the matter was in the hands of the court," and he stated that he would hold the check until the matter was decided by the court. Thane still holds the check, and the money is still on deposit to the credit of Mrs. Fuquay.

On June 25, 1917, J. W. Fuquay filed a voluntary petition in bankruptcy and was adjudged to be a bankrupt. Thane was appointed trustee for creditors and receiver to take charge of the property. On the day of the adjudication of bankruptcy, the referee made an order adjudging that the said funds in bank had been wrongfully transferred by the bankrupt to his wife as a gift without consideration, and the order restrained the bank from disposing of the funds, and also restrained the bankrupt and his wife from disposing of the funds. It does not appear that this order was served on Mrs. Fuquay, or that she otherwise became a party to the bankruptcy proceedings. Subsequently an order was made by the bankruptcy court allowing Fuquay's claim for exemptions in the sum of five hundred dollars out of said funds in bank and out of the proceeds of the sale of merchandise by the receiver, and the remainder was ordered distributed to creditors. This order has not been complied with as to funds in the bank, and, as before stated, the funds still remain there. The bankruptcy court also allowed the bankrupt's claim of homestead in the mortgaged property, subject to the mortgage. There are other details which will be referred to later in this discussion so far as found to be material.

Fuquay, the bankrupt, is, by his act in claiming exemptions out of the funds in bank, estopped from asserting the right to have the funds applied in satisfaction of the mortgage debt. The rights of Mrs. Fuquay stand, however, on a different basis. She was not a party to the bankruptcy proceedings and is not bound by the order of the bankruptcy court as to her individual rights in the

property. The funds were not in the hands or under control of the receiver or trustee, but were deposited in the bank to her credit, nor was she holding the funds as the agent of her husband. She held the funds in her own right to perform the conditions upon which the execution of the mortgage were based. The bankrputcy court had no jurisdiction to adjudicate her rights in the property. If the funds in her hands really belong to the estate of the bankrupt, a suit against her by the trustee in a court of competent jurisdiction is the appropriate proceeding to adjudicate her rights. I Collier on Bankruptcy, pp. 523-527. She testified that she refused to sign the mortgage except on condition that the borrowed money should be placed in her hands for use only in discharging the whole of the copartnership debts, so that the business of her husband could continue unmolested by creditors, and this was agreed to by her husband to procure her signature. The mortgage on the homestead could not have been legally executed without her signature, and this formed a valid consideration for the aforesaid agreement with reference to the disposition and use of the funds. *Hershy* v. *Latham,* 46 Ark. 542; *Baucum* v. *Cole,* 56 Ark. 259; *Davis* v. *Yonge,* 74 Ark. 161.

The mortgaged real estate being the homestead, the creditors could not complain of any disposition made of it, and the husband had the legal right to mortgage it for her benefit. The money borrowed was paid directly to her—did not pass to her husband and then come to her from him. So the general creditors could not complain unless they became parties to the transaction. None of the creditors except the bank was privy to this transaction, hence when the plan failed because it was found that the fund was insufficient to pay all of the debts, so as to comply with the conditions upon which Mrs. Fuquay joined in the mortgage, she had the right to apply the funds in discharge of the mortgage debt so as to restore the property in its former unincumbered condition.

The bank bears a different relation to the transaction and was in privity therewith. It lent the money on condition that it should be used in payment of the copartnership debts. This is in accordance with Thane's testimony, which we should accept as true, since it was accredited by the chancellor and is not overcome by a preponderance of the testimony. The bank has the right to insist that its own debt due by the copartnership be paid out of this fund before it is applied in satisfaction of the mortgage debt.

The decree of the chancery court was therefore erroneous in foreclosing the mortgage as to the whole of the debt, and it is reversed with directions to credit the mortgage debt with the remainder of this fund as of the date of the check, after deducting the amount of the debt due to the bank from the copartnership, and to decree a foreclosure of the mortgage for the amount of the balance due, with interest together with any amount of taxes on the land shown to have been paid by the bank.