GODFREY *v.* HERRING.

Opinion delivered February 11, 1905

1. FRAUDULENT CONVEYANCE—EVIDENCE.—Evidence held to support a finding of the chancellor that a certain conveyance was in fraud of creditors. (Page 188.)

2. SAME—RETENTION OF POSSESSION BY VENDOR.—Retention of possession of land by the vendor is not *prima facie* fraudulent, but is a badge of fraud. (Page 188.)

3. HOMESTEAD—EXCHANGE.—Where a home, exempt as a homestead, is exchanged for another home, the latter is likewise exempt. (Page 189.)

4. SAME—BREACH OF TRUST.—One who has appropriated trust funds in his hands cannot, as against the debt growing out of such breach of trust, claim his homestead exempt, under Const. 1874, art. 9, § 3. (Page 189.)

Appeal from Bradley Circuit Court.

ZACHARIAH T. WOOD, Judge.

Affirmed.

*Pugh & Wiley,* for appellants.

Fraud in the conveyance was not proved. 38 Ark. 419; 9 Ark. 482; 18 Ark. 124; 20 Ark. 216; 37 Ark. 145; 45 Ark. 492; 31 Ark. 554; 63 Ark. 16; 14 Am. & Eng. Enc. Law, 512; 52 N. Y. 274. Appellant was not a privy to any fraud, and gave value for the land. 23 Ark. 258; 18 Ark. 172; 46 Ark. 542; 49 Ark. 20. Appellee cannot complain of the conveyance of the Godfrey homestead. 52 Ark. 101; 54 Ark. 194; 52 Ark. 547; 66 Ark. 382.

*W. S. Goodwin* and *Wells & Williamson,* for appellee.

Every case must rest upon its own facts. 22 Ark. 184; 69 S. W. 602.

HILL, C. J. This is an action by Mary E. Herring against her father and stepmother to set aside a conveyance alleged to be in fraud of her rights as a creditor of her father. Her claim against her father was reduced to judgment January 5, 1900, and affirmed orally in this court December 20, 1902. The claim thus reduced to judgment long antedated the transactions complained of. The contest involves two parcels of land, one a tract of 1,037 acres on Saline River, in Bradley County, and the other a town lot in Warren. The title to both were in Mrs. Godfrey, and the court found the conveyances to her fraudulent, and subjected them to the payment of the judgment, and Godfrey and wife appeal.

In 1896 Godfrey was in possession as owner of the Saline River tract, and claimed to have sold it to one Stephens, who lived about seven miles distant therefrom in Ashley County, for the sum of $1,200, of which $400 were paid at the time of the purchase, and two notes for $400 each given for the balance, due in one and two years. He claimed to have put Stephens in possession at once, and that no other writings than the notes evidenced the sale. It is further testified by the parties thereto that Stephens paid the notes when due, and when he paid the last one a deed was made to him, which Godfrey was to have recorded, which was not done until after this litigation began. At the time of the execution of the deed, it is testified by the parties in interest that Stephens wanted to sell the place, and about two weeks thereafter Mrs. Godfrey bought it of him, and paid him $1,300 cash therefor, and he deeded it to her, and that deed is one in question. The evidence shows Mrs. Godfrey to have been possessed of sufficient means in her own right to have made this purchase, and the evidence satisfies that the price is not so grossly inadequate as to be of itself a badge of fraud. There is much evidence, however, impeaching circumstantially the integrity of this transaction; and if it is of sufficient probative force to convince that the sale to Stephens and resale to Mrs. Godfrey were simulated transactions, then it must be set aside, notwithstanding the entirely plausible and reasonable testimony given by each of these interested parties. The

strongest single circumstance against the reality of the sale and resale is the possession of the property. The alleged sale is claimed to have occurred in the presence of two witnesses, one said to be dead, and the other not called. The only person seeming to know it had occurred was the assessor, who says he was told to note the change in title on the assessment books, but that he forgot to do it. The only actual change of possession of the farm which was shown was that Godfrey took off some papers and books and other small personal belongings in his buggy, leaving Stephens there for a day. Thereafter Godfrey continued, as they say, as agent and renter of the place until Stephens sold it to Mrs. Godfrey, and his only rent to be some repairs. It does not appear that Stephens was about the place any more, and Godfrey continued in control. So quietly was the change effected that it was not known in the neighborhood nor in Stephens' family circle. It did not appear on any county record, and there was no outward and visible evidence of any change in possession or control. Not even as much evidence of change of possession is shown here as was evidenced at common-law by delivery of a broken twig in the presence of witnesses, constituting a symbolical delivery. Retention of possession of real estate is not *prima facie* fraudulent but is an *indicium* of fraud. *Apperson* v. *Burgett,* 33 Ark. 328. Stephens' testimony shows that he is unfamiliar with the place, or rather places, as there were two separate places in this tract. He is not shown to be a man of considerable means, and his utter disregard of so substantial part of his estate is unreasonable. His rents' were to be paid in repairs, which are not shown to have been made. In fact, Mrs. Godfrey testified that the place was in the same condition when she bought as it was when her husband sold it. She further shows that in 1900, when personal attention was given to it, it produced a substantial income. There are many other circumstances in evidence impeaching this transaction, and the court cannot say that the chancellor's finding is against the preponderance of the evidence.

2. Godfrey owned a homestead in the village of Johnsville. He traded it for a lot in Warren, paying $200 in addition to the exchange, and taking the title in the name of Mrs. Godfrey. That deed is the other one in question. Treating the

transaction, as appellant's counsel do, as a direct transfer of his homestead to his wife, the effect thereof must be tested by the evidence in the case.

As to the $200 paid on the Warren lot, that is claimed to have been a repayment of loans made Godfrey by his wife to defray the expenses of two trips to Hot Springs for his health. In the case of *Davis* v. *Yonge, ante,* p. 161, the opinion of Mr. Justice Riddick expresses fully the opinion of the court on the subject of repayment to the wife of loans to the husband in preference to creditors. This case differs from that in that the loans here were not ancient. The evidence, however, fails to convince that sums advanced for the purpose of aiding a sick husband to recover his health were regarded as debts.

If the homestead was exempt, then its value in the exchanged property is exempt from the judgment lien. The judgment shows this to be the character of the debt: "The court finds that the defendant, Sam W. Godfrey, has and holds in his hands as trustee for the use and benefit of the plaintiff, Mary E. Herring, the sum of $1,000, left with defendant by J. G. Gills, the grandfather of plaintiff, in trust for said plaintiff." The constitutional exemption does not extend to "executors, administrators, guardians, receivers, attorneys, for moneys collected by them, and other trustees of an express trust, for moneys due from them in their fiduciary capacity. Const. 1874, art. 9 § 3. Mr. Justice BATTLE, for this court, after quoting the above clause, said: "The cases enumerated in each are cases of special trusts. The persons expressly designated as not coming within the homestead exemption of the Constitution of 1874 are persons who hold moneys exclusively for the benefit of others, and the relations between whom and for whom they hold money are purely of confidence and trust; and the 'other trustees of an express trust' mentioned must mean the same class of trustees." *Sanders* v. *Sanders,* 56 Ark. 585.

The recital in the judgment proves this to be of the character of debt excepted from the beneficence of the homestead exemption.

The judgment is affirmed.